UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN ELLICOTT,<br><br>    Plaintiff,<br>v.<br><br>AMERICAN CAPITAL ENERGY, INC.,<br>THOMAS HUNTON and ARTHUR<br>HENNESSEY,<br><br>    Defendants,<br><br>and<br><br>REDWOOD SOLAR DEVELOPMENT, LLC,<br><br>    Reach and Apply Defendant. | Civil Action No. 14-CV-12152 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REAL ESTATE ATTACHMENTS AND TO REACH AND APPLY AND INJUNCTION

Plaintiff Stephen Ellicott requests that the Court attach the real property located in the Commonwealth of Massachusetts owned by Defendant American Capital Energy, Inc. ("ACE") and its principals, Defendants Thomas Hunton and Arthur Hennessey, in the amount of $1,300,000. Mr. Ellicott further requests that the Court reach and apply monies purportedly due to ACE from Reach and Apply Defendant Redwood Solar Development, LLC ("Redwood") in the amount of $1,300,000.

### Introduction

Mr. Ellicott is a former employee of ACE, a solar energy company. Hunton and Hennessey serve as ACE's principals. Mr. Ellicott has brought a Massachusetts Wage Act claim against all Defendants for unpaid wages. ACE's excuses for failing to pay Mr. Ellicott hold no water. Mr. Ellicott will recover at trial in excess of $1,300,000 in unpaid wages, not including treble damages and attorney's fees as mandated by the Wage Act.

The issue in this case is not whether Mr. Ellicott is entitled to his earnings. Rather, the issue is whether Mr. Ellicott will collect on his anticipated judgment. ACE is currently embroiled in no less than seven (7) other lawsuits, including another Wage Act suit brought by another former ACE employee. ACE has been sued for millions of dollars in damages, some of which has already been secured through pre-judgment attachments. Mr. Ellicott deserves to have his place in line secured. The Court should allow Mr. Ellicott's requests for relief.

## Factual Background

### Mr. Ellicott's employment with ACE

Mr. Ellicott commenced working as a salesman for ACE in 2007. See Affidavit of Anthony L. DeProspo, Jr. ("DeProspo Aff."), submitted herewith at ¶ 3. On April 23, 2008, ACE executed a written contract which set forth the terms of Mr. Ellicott's compensation (the "Agreement"). Id. at ¶ 4. ACE agreed to pay Mr. Ellicott commissions equal to 40% of the profit margin on each solar installation he sold. Id. at ¶ 10. Pursuant to the Agreement, ACE paid Mr. Ellicott a monthly draw on future commissions. Id. at ¶ 5. Mr. Ellicott ceased working for ACE in 2013. Id. at ¶ 7.

ACE does not dispute that Mr. Ellicott sold eight (8) solar projects for which he is due compensation. See DeProspo Aff. at ¶ 6. Mr. Ellicott has retained an expert from PriceWaterhouseCoopers ("PWC") who will testify that Mr. Ellicott is owed over $1.3 million in unpaid commissions for those projects. Id. at ¶ 8. ACE, on the other hand, has manipulated Mr. Ellicott's compensation structure to such a degree that, incredibly, ACE claims that Mr. Ellicott *owes ACE* almost $300,000 for projects that purportedly lost money. Id. at ¶ 9. Mr. Ellicott was not a partner nor a joint-venturer with ACE. Id. at ¶ 21.

ACE's creative commission calculations are inconsistent with both the unambiguous terms of the Agreement as well as the testimony of Defendants Hunton and Hennessey. See DeProspo Aff. at

¶ 9. ACE's commission calculations also directly contradict information reported to and calculations made by ACE's own auditors. Id. at ¶ 20.

### Litigation against ACE

This suit is one of several lawsuits ACE is currently defending, some of which have already been adjudicated against ACE and for which pre-judgment relief has already been obtained:

1) <u>Hagan v. American Capital Energy, Inc.</u>, Middlesex County Superior Court, Civil Action No. 13-04749 (former ACE employee has brought Wage Act claim and has obtained a $2,315,726 attachment). See DeProspo Aff. at ¶¶ 26-32.

2) <u>American Capital Energy, Inc., et al. v. CF CVEC Owner One, LLC, at al.</u>, Middlesex County Superior Court, Civil Action No. 14-08297 (injunction issued against ACE's assets). Id. at ¶ 33.

3) <u>American Capital Energy, Inc. v. The Real Thing, LLC</u>, Suffolk County Superior Court, Civil Action No. 14-1525 (arbitrator has ruled against ACE; the Court has ordered an $890,000 trustee process attachment). Id. at ¶ 34.

4) <u>Sunlink Corp. v. American Capital Energy, Inc.</u>, United States District Court, District of Massachusetts, Civil Action No. 15-13606 (arbitrator has found ACE liable for damages in the amount of $7,856,649.60). Id. at ¶ 36.

5) <u>American Capital Energy, Inc., et al. v. Redwood Solar Development LLC</u>, Barnstable County Superior Court, Civil Action No. 15-00025, Dukes County Civil Action No. 15-00006 (Defendant has counterclaimed against ACE for approximately $2.2 million). Id. at ¶¶ 35, 37.

6) <u>Florence Electric LLC, at al. v. American Capital Energy, Inc., et al.</u>, Barnstable County Superior Court, Civil Action No. 15-00369 (Plaintiff claims over $3.2 million in damages and has obtained an injunction against certain ACE assets). Id. at ¶ 38.

### Hagan Litigation

Mr. Ellicott's suit is not the only Wage Act case ACE currently defends. On October 31, 2013, Michael Hagan, another former ACE salesperson, brought suit against ACE (and Hunton and Hennessey) for over $2.3 million in unpaid commissions. See DeProspo Aff. at ¶ 27. The Hagan and Ellicott employment agreements are virtually identical. Id. at ¶¶ 4, 28. On November 8, 2013, the Court approved a writ of attachment for $2,315,736, the full amount of Mr. Hagan's claim, against all

real estate held in ACE's name, and a trustee process attachment against funds held by ACE in two (2) Massachusetts banks. Id. at ¶ 30. On October 23, 2015, the Court allowed a $2,315,736 real estate attachment to issue against real property owned by Hunton and Hennessey, individually. Id. at ¶ 31.

### Redwood Litigation

In 2013, ACE contracted with Redwood to construct solar arrays in several Cape Cod and Martha's Vineyard communities. See DeProspo Aff. at ¶ 38. ACE claims that the projects have been completed and that Redwood has failed to pay ACE for the work. Id. On January 20, 2015, ACE brought suit against Redwood for the amounts due (the "Redwood Litigation"). Id. at ¶ 35. ACE claims that Redwood owes ACE over $12 million in damages. Id. at ¶ 39.

## Argument

"In order to obtain an attachment order [under Massachusetts law], a plaintiff must demonstrate 1) a reasonable likelihood of success on the merits and 2) a reasonable likelihood of recovering a judgment equal to or greater than the amount of the attachment sought that is 3) over and above any liability insurance shown by the defendant to be available to satisfy the judgment." Greenbriar Cos., Inc. v. Springfield Terminal Ry., 477 F. Supp. 2d 314, 317 (D. Mass. 2007). In addition, G.L. c. 214, § 3(6) authorizes "creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth ... ." It is well-settled that a creditor may reach and apply a cause of action for damages that a debtor has against a third-party. See Digney v. Blanchard, 229 Mass. 235 (1918). Mr. Ellicott will prevail on his claims at trial. He is entitled to the requested attachments.

### A.     **Mr. Ellicott Will Succeed On The Merits Of His Claims**

"In proving . . . likelihood of success on the merits, the movant need not demonstrate that there is no chance that he will lose." In re Aerovox, Inc., 281 B.R. 419, 433 (D. Mass. Bankr. 2002)

(internal citation and quotation omitted). Rather, the plaintiff must merely show that he will probably ultimately prevail. See Loyal Order of Moose, Inc., Yarmouth Lodge No. 2270 v. Bd. of Health of Yarmouth, 439 Mass. 597, 601-03 (2003). Mr. Ellicott's employment Agreement is unambiguous, and his commissions are easily calculable. ACE has eviscerated Mr. Ellicott's commissions by taking several "deductions" from commissions due, none of which are contained in the Agreement. ACE's dubious commission "deductions" fall into four (4) categories:

(1) Applying a 30% commission rate rather than the 40% rate set forth in the Agreement.

(2) Arbitrarily "splitting" Mr. Ellicott's commissions with unidentified support staff who have yet to be paid.

(3) Deducting considerable commissions for purportedly non-profitable projects even though the parties were neither partners nor joint-venturers.

(4) Deducting arbitrary overhead and repair work not contemplated by the Agreement.

ACE concedes that Mr. Ellicott is entitled to commissions on eight (8) solar projects he sold. See DeProspo Aff. at ¶ 6. At issue is the method by which ACE has calculated those commissions. Mr. Ellicott addresses each of ACE's self-serving calculation methods in turn.

**Commission Rate**

The Agreement states as follows: "Sales Commission – 40% of profit margin on each sale and installation to be paid within 30 days after the client pays ACE and installation is complete." See DeProspo Aff. at ¶ 10. Of the eight (8) projects at issue, ACE has applied a 40% commission rate to the first three (3) projects only, and a 30% rate to the remaining five (5) projects. Id. at ¶ 12. ACE claims that it "orally" modified the terms of Mr. Ellicott's Agreement and unilaterally reduced the commission rate by 10%. Id. at ¶ 11. At their respective depositions, however, Defendants testified that the alleged modification did not occur until **after** Mr. Ellicott's last sale. Id. at ¶ 13. Mr. Ellicott is entitled to a 40% commission on each sale as set forth in his Agreement.

### Commission "Split"

The Agreement states as follows: "The commissions may be reasonably split with various sales support personnel by mutual agreement." See DeProspo Aff. at ¶ 14. Mr. Ellicott has testified that he never agreed to share his commissions with anyone, support staff or otherwise. Id. at ¶ 15. The Court can (and should) accept Mr. Ellicott's uncontroverted statement. However, if the Court requires additional evidence that ACE has arbitrarily created a 50/50 commission "split" after-the-fact, the Court should consider the following:

- Hunton has testified that the Agreement contains no requirement that Mr. Ellicott split commissions with sales support staff. Id. at ¶ 17.

- The Agreement by its own terms does not indicate that the "split" would be 50/50. Id. at ¶ 16. ACE has randomly chosen that allocation.

- Hunton has testified that ACE had no agreement with sales support staff to pay portions of Mr. Ellicott's commissions and that support staff all received yearly salaries. Id. at ¶ 18.

- Hennessey has testified that ACE has not paid the sales support staff their purported split of commissions (some going back five years or more) and that several employees purportedly entitled to a split *no longer work at ACE*. Id. at ¶ 19. In other words, ACE has pocketed 100% of Mr. Ellicott's commissions.

- As of the end of 2010, ACE's auditing firm reported that ACE owed Mr. Ellicott $484,545 in commissions. Id. at ¶ 20. The auditors did not calculate any purported split. Id.

ACE's "split-commission" deduction reduces Mr. Ellicott's commissions by almost $300,000. The Agreement contains no requirement that Mr. Ellicott split his commissions, nor has ACE paid out employee shares of any such splits. Mr. Ellicott is entitled to the full amount of his commissions.

### "Negative" Commissions

ACE has deducted over $500,000 from Mr. Ellicott's commissions on the basis that his employment Agreement purportedly obligates him to *reimburse* ACE, at his commission rate, for projects which he sold that allegedly lost money. ACE's position is preposterous. Mr. Ellicott had

no agreement to share profits or losses with ACE. There was no partnership, no joint-venture agreement. ACE's auditors agree. In calculating Mr. Ellicott's commissions, ACE's auditing firm did not deduct project losses. See DeProspo Aff. at ¶ 22. It correctly allocated a zero commission for the one (1) project that purportedly lost money. Id.

Even if the Agreement could be construed as obligating Mr. Ellicott to share in profits and losses, which it does not, such a compensation scheme would violate public policy. "The Wage Act by its plain terms aims to protect employees by preventing the detention of wages." Stanton v. Lighthouse Fin. Servs., Inc., 621 F. Supp. 2d 5, 18 (D. Mass. 2009). "No person shall by a special contract with an employee or by other means exempt himself from [the Wage Act]." Awuah v. Coverall North Am., Inc., 740 F. Supp. 2d 240, 244-245 (D. Mass. 2010). ACE would have this Court believe that Mr. Ellicott, after six (6) years of employment, could have potentially owed ACE millions of dollars in "negative" commissions, depending on the profitability of the projects he sold. The notion is absurd on its face.

**Overhead**

ACE has added to each project purported overhead costs, arbitrarily calculated as 5.6% of direct project costs, and "O&M costs," arbitrarily calculated as 1% of direct project costs. See DeProspo Aff. at ¶ 23. Mr. Ellicott's employment Agreement says nothing about these "costs" being deducted from project revenue. ACE's own auditor could not confirm precisely how the 5.6% overhead was calculated other than it included salaries, *including the owner's salaries.* Id. at ¶ 24. ACE's auditor did acknowledge, however, that it would be inappropriate to apply the same overhead percentage for every year Mr. Ellicott received commissions, yet that is what ACE did. Id. ACE's auditor could not identify any basis for the 1% "O&M" cost, nor did ACE's auditor include that deduction in any of Mr. Ellicott's commission calculations. Id. at ¶ 25.

Even if ACE's purported overhead deductions made mathematical or business sense, which, again, they do not, the Agreement does not allow ACE to deduct overhead from Mr. Ellicott's commissions. They should not be considered now.

### B.   Mr. Ellicott Is Entitled To A Real Estate Attachment

Mr. Ellicott's expert, relying on the unambiguous terms of the Agreement, has calculated that ACE has withheld from Mr. Ellicott $1,353,359.00 in unpaid wages. See DeProspo Aff. at ¶ 8. This is a *conservative* opinion, as it accepts at face value ACE's revenue and project cost calculations. Nevertheless, Mr. Ellicott seeks a real estate attachment in the amount of $1,300,000. Again, this is a conservative request. It does not take into consideration treble damages or counsel fees for which Mr. Ellicott is entitled under the Wage Act.

Mr. Ellicott is unaware of any liability insurance available to satisfy an anticipated judgment. Id. at ¶ 41. All of Defendants' real property, including that of Defendants Hunton and Hennessey, individually, are already encumbered by the attachments issued in the Hagan litigation. That notwithstanding, Mr. Ellicott satisfies the requirements for a real estate attachment, albeit he will be subordinate to Mr. Hagan. Mr. Ellicott requests that the Court issue an attachment on Defendants' real property in the amount of $1,300,000.

### C.   Mr. Ellicott Is Entitled To Reach And Apply ACE's Possible Recovery In The Redwood Litigation

Because Mr. Ellicott would hold a subordinate position vis-à-vis Defendants' real estate, the Court should also allow Mr. Ellicott's request to reach and apply funds Redwood owes ACE. The interest a plaintiff receives upon the granting of a reach and apply injunction has been characterized as an equitable substitute for attachment by trustee process when the interest involved is not one subject to traditional attachment, i.e., when the debt is "contingent," not presently due and owing. See Tilcon Capaldi, Inc. v. Feldman, 249 F.3d 54, 59 (1st Cir. 2001). The standard for obtaining an

injunction prohibiting the Reach and Apply Defendant from paying ACE is the standard applicable to attachments, not the standard ordinarily applicable to injunctive relief. See In re Cohn, 11 B.R. 611, 613 (Bankr. D. Mass. 1981).

Under G.L. c. 214, § 3(6), "the court must engage in a two-step process to establish (1) the indebtedness of the defendant and (2) the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt." Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 57 (D. Mass. 2002). Mr. Ellicott satisfies the first requirement. As set forth supra, Mr. Ellicott has shown that ACE owes him over $1.3 million in unpaid wages. Mr. Ellicott also satisfies the second requirement. Redwood is a debtor of ACE. Indeed, ACE previously agreed to pay Mr. Hagan with proceeds received in connection with the Redwood project. See DeProspo Aff. at ¶ 29. Having previously made those funds available to pay overdue commissions, ACE should not be allowed to abscond with those funds without paying Mr. Ellicott. Mr. Ellicott is entitled to attach by reach and apply injunction any funds that Redwood is obligated to pay ACE.

## Conclusion

For the reasons set forth herein, the Court should allow Plaintiff Stephen Ellicott's motion for real estate attachments and for reach and apply injunction.

December 15, 2015

Respectfully submitted,
STEPHEN ELLICOTT,

By his attorney,

/s/ Anthony L. DeProspo, Jr.
Christopher A. Kenney (BBO# 556511)
(cakenney@KandSlegal.com)
Anthony L. DeProspo, Jr. (BBO# 644668)
(aldeprospo@kandslegal.com)
KENNEY & SAMS, P.C.
225 Turnpike Road
Southborough, Massachusetts 01772
Tel.: (508) 490-8500
Fax: (508) 490-8501

## CERTIFICATE OF SERVICE

I hereby certify that the attached document was filed through the ECF system and was served electronically to the registered attorneys of record on December 15, 2015.

                /s/ Anthony L. DeProspo, Jr.
                Anthony L. DeProspo, Jr.