# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN ELLICOTT, | ) |
| Plaintiff, | ) |
| v. | ) |
| AMERICAN CAPITAL ENERGY, INC., | ) Civil Action No. |
| THOMAS HUNTON, and | ) 14-12152-FDS |
| ARTHUR HENNESSEY, | ) |
| Defendants, | ) |
| and | ) |
| REDWOOD SOLAR DEVELOPMENT, LLC, | ) |
| Reach and Apply Defendant. | ) |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND PLAINTIFF'S MOTION FOR A REAL ESTATE ATTACHMENT AND REACH AND APPLY ORDER

**SAYLOR, J.**

This is a contract dispute between a solar energy company and a former sales employee over unpaid commissions for eight solar-installation projects. Plaintiff Stephen Ellicott has brought suit against American Capital Energy, Inc. and its two principals, Thomas Hunton and Arthur Hennessey (collectively, "ACE"). The complaint alleges claims for breach of contract and violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148.

Ellicott has moved for an attachment of ACE's real property in Massachusetts and a reach and apply order against certain funds owed to ACE by reach and apply defendant Redwood Solar Development, LLC. Ellicott has also moved to amend the complaint in order to

add Redwood as a reach and apply defendant.  Ellicott contends that ACE owes him $1.3 million in unpaid commissions according to the terms of his employment agreement, and thus seeks an attachment order and reach and apply order to secure that amount.  ACE contends that Ellicott owes it $286,391 in overdrawn advances against his commissions.

The parties have both submitted, among other evidence in support of their respective positions, expert reports by certified public accountants.  Ellicott has also submitted excerpts of various depositions.  After reviewing the employment agreement, the parties' expert reports, and the other evidence, the Court concludes that Ellicott has a reasonable likelihood of prevailing on his breach of contract claim and recovering a judgment of at least $722,266.  Accordingly, the motion for a real estate attachment will be granted in part.  The motion for a reach and apply order will be granted, and the motion to amend the complaint to add Redwood Solar Development, LLC as a reach and apply defendant will be granted.

## I.     **Background**

Stephen Ellicott worked for ACE as a sales employee from 2007 to 2013.  (DeProspo Aff. ¶¶ 3, 7).  The parties do not dispute that from 2008 to 2013, Ellicott sold eight solar-installation projects for which he now claims commissions.  (*Id.* at ¶ 6; Ex. C at 6).  Ellicott was an employee of ACE, not a partner or joint-venturer.  (*Id.* at ¶ 21; Ex. F at 49:5-20).

On April 23, 2008, Tom Hunton, the President of ACE, signed a letter that he described as a "[c]omp plan confirmation for Steve Ellicott with American Capital Energy."  (*Id.* at ¶ 4; Ex. B).  Among other things, ACE agreed to pay a sales commission to Ellicott of "40% of profit margin on each sale and installation to be paid within 30 days after the client pays ACE and

installation is complete." (Ex. B at ¶ 2). The letter also provided that "[t]here is a draw paid monthly at the annual rate of $120,000." (*Id.*).

ACE contends that the parties orally modified the commission rate to 30 percent in early 2011. (*Id.* at ¶ 11; Ex. A at 67:8-68:14). Ellicott contends that any alleged modification, if it occurred at all, did not occur until after his last sale; he notes that Hennessey, at his deposition, admitted that Ellicott was entitled to 40 percent commissions on all eight projects because they all began incurring costs before the alleged oral modification. (*Id.* at ¶ 13; Ex. F at 61:7-67:23).

The letter also stated that "[t]he commissions may be reasonably split with various sales support personnel by mutual agreement." (*Id.* at ¶ 14; Ex. B at ¶ 2). At his deposition, Ellicott testified that he never agreed to share his commissions. (*Id.* at ¶ 15; Ex. D at 46:22-24). Hunton testified that ACE did not have an agreement with sales support staff to pay them portions of Ellicott's commissions. (*Id.* at ¶ 18; Ex. A at 48:16-23).

In calculating Ellicott's commissions, ACE's auditor deducted "direct labor costs" from the gross profit margins of Ellicott's projects; it appears that deduction was calculated as 5.6 percent of direct project costs. (*Id.* at ¶ 23; Ex. C at 6).

In 2013, ACE contracted with Redwood Solar Development, LLC to build solar arrays on Cape Cod and Martha's Vineyard. (*Id.* at ¶ 39). On January 20, 2015, ACE brought suit against Redwood for breach of contract, alleging more than $12 million in damages. (*Id.* at ¶¶ 35, 39-40).

In April 2014, Ellicott filed a complaint against ACE in state court. The complaint alleges one claim for breach of contract and one claim for violation of the Massachusetts Wage Act, treble damages, attorneys' fees, and costs pursuant to Mass. Gen. Laws ch. 149, § 148.

ACE removed the action to this Court in May 2014. On December 15, 2015, after conducting discovery, Ellicott moved for an attachment of ACE's Massachusetts real estate in the amount of $1.3 million, as well as a reach and apply order against funds allegedly owed to ACE by Redwood. Ellicott also moved to amend the complaint to narrow the scope of its pleadings and to add Redwood as a reach and apply defendant. During the hearing on Ellicott's motions, the Court indicated that it would grant his motion to amend the complaint's substantive allegations because he had met the Rule 16 "good cause" standard; however, the Court took under advisement his motion for a real estate attachment and reach and apply order.

## II.    Analysis

In order to obtain a real estate attachment under Massachusetts law, a plaintiff must demonstrate "(1) a reasonable likelihood of success on the merits and (2) a reasonable likelihood of recovering a judgment equal to or greater than the amount of the attachment sought that is (3) over and above any liability insurance shown by the defendant to be available to satisfy the judgment."[1] *Greenbriar Cos. v. Springfield Terminal Ry.*, 477 F. Supp. 2d 314, 317 (D. Mass. 2007) (citing *International Ass'n of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works, Inc.*, 164 F.R.D. 305, 306-07 (D. Mass. 1995)). As to a reach and apply order against money owed to a defendant by a third party, Mass. Gen. Laws ch. 214, § 3(6) authorizes "creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth . . . ." Under that statute, "the court must engage in a two-step process to establish (1) the indebtedness of the defendant [to the plaintiff] and (2) [that] the defendant has property that can be reached by the plaintiffs in

---

[1] Ellicott's counsel has stated in an affidavit that he is not aware of any liability insurance carried by ACE that would be available to satisfy a potential judgment. (DeProspo Aff. ¶ 41).

satisfaction of the defendant's debt." *Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57 (D. Mass. 2002) (citations omitted). "While not all contract claims must be reduced to judgment before the statutory reach and apply is available, a plaintiff may not seek to reach and apply assets where . . . the defendant['s] liability 'is hotly contested and there are disputed issues of fact which must be resolved.'" *Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.*, 2011 WL 2417128, at *6 (D. Mass. June 10, 2011) (quoting *Hunter*, 241 F. Supp. 2d at 58).

Ellicott contends that, based on the terms of his employment agreement, the deposition testimony, and his expert report, there is more than a reasonable likelihood that he will recover a judgment of $1.3 million. Ellicott's expert report, prepared by a certified public accountant at PricewaterhouseCoopers, states that ACE owes him $1.3 million in unpaid commissions from the sale of eight projects. The report, however, also includes a more conservative estimate of $722,266, as detailed below. ACE contends that the underlying facts are too "hotly contested" to conclude that there is a reasonable likelihood that Ellicott will recover a judgment; in fact, ACE's expert report states that Ellicott actually owes ACE overdrawn allowances against his commissions in the amount of $286,391. (Defs. Mem. 2).

There appear to be four major disputed issues that affect the parties' respective calculations. First, Ellicott contends that he earned 40 percent commissions on the gross profits of all eight projects in question. ACE contends that the final five projects that Ellicott sold occurred after the parties orally modified his employment agreement to decrease his commissions to 30 percent. Second, Ellicott contends that he did not agree to split his commissions with any sales support staff; ACE contends that he did. Third, Ellicott contends that the terms of his employment agreement did not mandate that he pay "negative commissions"

5

for unprofitable projects; he would simply earn no commission on those projects.  ACE contends that Ellicott did agree to pay negative commissions on unprofitable projects.  Fourth, Ellicott contends that ACE arbitrarily reduced the gross profits for his projects by 5.6 percent of their direct costs in order to cover "labor burden" expenses.  He also contends that the 5.6 percent figure is inaccurate because it covers the salaries of ACE's owners; according to him, labor burden expenses should include direct labor, such as project managers and engineers, but not indirect labor or overhead expenses.  ACE contends that it is generally accepted within the industry to deduct overhead and direct labor expenses from sales commissions.

The $1.3 million calculation by Ellicott's expert resolves each of those four disputed issues in his favor—that is, it assumes 40 percent commissions on all eight profitable projects, no commission split with sales support staff, zero (not negative) commissions for unprofitable projects, and no deduction for overhead or direct labor expenses.[2]  The report, however, also includes a more conservative, $722,266 estimate of Ellicott's unpaid commissions.  That estimate assumes that the first three disputed issues are resolved in Ellicott's favor, but applies ACE's 5.6 percent deduction for labor burden expenses.[3]  ACE's estimate in its expert report appears to resolve all four disputed issues in its favor.

After reviewing, among other things, the parties' expert reports and the deposition testimony, the Court finds that there is a reasonable likelihood that Ellicott will recover a

---

[2] Ellicott's expert does not appear to dispute that some deduction of Ellicott's commissions for direct labor costs is appropriate.  However, the report indicates that because ACE's 5.6 percent figure is arbitrary and Ellicott does not have sufficient data to calculate a more appropriate percentage, it does not include any deduction for direct labor costs.

[3] Ellicott's conservative estimate also appears to exclude his commission on the "Houwelings Solar Thermal" project, which is included in the higher estimate, because there is a dispute over whether that project was separate from the significantly unprofitable "Houwelings PV" project.

judgment of at least $722,266 on his breach of contract claim.[4]  First, there appears to be a reasonable likelihood that Ellicott earned 40 percent commissions on all eight profitable projects, either because the parties did not mutually agree to orally lower his commissions to 30 percent, or, even if they did, because the obligation to pay Ellicott's commissions was triggered before any such oral modification occurred.  Second, the employment agreement stated only that the parties "may" split commissions with sales-support staff by "mutual agreement," and there appears to be a reasonable likelihood that Ellicott did not agree to any split, much less a 50 percent split as ACE contends.  Third, there appears to be a reasonable likelihood that the employment agreement, whether by its explicit terms or according to generally accepted practices in the sales industry, did not obligate Ellicott to reimburse ACE for "negative commissions" on unprofitable projects.  Finally, there appears to be a reasonable likelihood that at least some deduction from Ellicott's commissions for direct labor costs is appropriate.  Ellicott's expert appears to concede the issue, at least somewhat, by including ACE's 5.6 percent deduction in the conservative estimate.  Accordingly, there appears to be a reasonable likelihood that Ellicott will recover a judgment of at least $722,266, and a real estate attachment against ACE's Massachusetts real property in that amount is appropriate.

As to Ellicott's motion for a reach and apply order, having found that there is a reasonable likelihood that ACE is indebted to Ellicott, the Court need only determine whether ACE has property that can be reached by Ellicott in satisfaction of the debt.  ACE has stipulated that reach and apply defendant Redwood owes it money, and it indicated during the hearing on

---

[4] Counsel for Hunton and Hennessey have indicated that they will be moving for summary judgment on Ellicott's Wage Act claim because the commissions are not "definitely determined" and "due and payable."  Mass. Gen. Laws ch. 149, § 150.  Without passing judgment on that argument, the Court will consider only Ellicott's breach of contract claim for the purposes of the present motion.

Ellicott's motions that it had entered into arbitration with Redwood. Accordingly, to the extent that ACE's real property in Massachusetts does not fully cover the $722,266 real estate attachment, the Court will grant Ellicott's motion for a reach and apply order and his motion to amend the complaint in order to add Redwood Solar Development, LLC as a reach and apply defendant.

### III. Conclusion

For the foregoing reasons, it is hereby ordered that:

1. The motion for a real estate attachment is GRANTED in part and DENIED in part. That order of attachment in the amount of $722,266 shall issue separately from this memorandum and order.

2. The motion for a reach and apply order is GRANTED. That order shall issue separately from this memorandum and order.

3. The motion to amend the complaint is GRANTED, and the proposed first amended complaint filed on December 15, 2015 (Docket No. 60 Ex. 1) is hereby the effective complaint in this action as of the date of this memorandum and order.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: February 19, 2016                    United States District Judge