UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
STEPHEN ELLICOTT,                                   )
                                                    )
        Plaintiff,                                  )
                                                    )
        v.                                          )
                                                    )
AMERICAN CAPITAL ENERGY, INC.,                      )      Civil Action No.
THOMAS HUNTON, and                                  )      14-12152-FDS
ARTHUR HENNESSEY,                                   )
                                                    )
        Defendants,                                 )
                                                    )
        and                                         )
                                                    )
REDWOOD SOLAR                                       )
DEVELOPMENT, LLC,                                   )
                                                    )
        Reach and Apply Defendant.                  )
_____)

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

SAYLOR, J.

        This is a contract dispute between a solar energy company and a former sales employee

over allegedly unpaid commissions for eight solar-installation projects.  Jurisdiction is based on

diversity of citizenship.  Plaintiff Stephen Ellicott has brought suit against American Capital

Energy, Inc. ("ACE") and its two principals, Thomas Hunton and Arthur Hennessey.  The

complaint alleges claims for violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149,

§ 148 (Count One) and breach of contract (Count Two).

        Ellicott has moved for summary judgment on both claims.  He contends that it is

undisputed that ACE has failed to pay at least some of his earned commissions, and has

requested that the Court schedule a trial to determine damages.  ACE has cross-moved for summary judgment on Ellicott's Wage Act claim, contending that his claim fails as a matter of law because the value of the allegedly unpaid commissions is not definitely determined.  ACE also contends that it has already adequately compensated Ellicott through draws against his commissions.

For the following reasons, both motions will be denied.

I. **Background**

A. **Factual Background**

The parties dispute the core issue of this case, which is how to calculate Ellicott's commissions under the terms of his compensation plan.  Both parties have submitted supporting evidence, including expert accounting reports.  Before summarizing the numerous disputed issues of fact, the Court will provide a background that appears to be undisputed.

1. **Undisputed Facts**

Plaintiff Stephen Ellicott resides in Barrington, Rhode Island.  (Am. Compl. ¶ 2). Defendant American Capital Energy, Inc. is a solar energy company with a principal place of business in Massachusetts.  (Hunton Dep. 20:1-3).  Defendants Thomas Hunton and Arthur Hennessey are principals of ACE.  (*Id.* at 133:11-16).  Hunton is ACE's president.  (*Id.* at 20:11-16).  Hennessey is ACE's chief financial officer.  (Hennessey Dep. 11:3-9).

From 2007 to 2013, Ellicott worked for ACE as a sales employee, with a focus on marketing large-scale solar installations to commercial clients.  (*Id.* at 49:5-10; Hunton Dep. 236:15-240:13).  Ellicott was not a partner or joint-venturer with Hunton and Hennessey; rather,

he was an ACE employee compensated on a commission-draw basis.  (Hennessey Dep. 49:10-20).

On April 23, 2008, Hunton signed a letter that he described as a "[c]omp plan confirmation for Steve Ellicott with American Capital Energy."  (Pl. Ex. B).  In that compensation plan, ACE agreed to pay a sales commission to Ellicott of "40% of profit margin on each sale and installation to be paid within 30 days after the client pays ACE and installation is complete."  (*Id.*).  The plan provided that those commissions "may be reasonably split with various sales support personnel by mutual agreement."  (*Id.*).  The letter also provided that "[t]here is a draw paid monthly at the annual rate of $120,000," and that "[t]ravel expenses relating to the role will be reimbursed."  (*Id.*).

From 2008 to 2013, Ellicott sold eight solar-installation projects for which he may have been entitled to commissions.  (Hennessey Dep. 123:4-19; 126:3-9).  For each of those eight projects, ACE completed the installation and received payment in full from the client.  (*See* Pl. SMF ¶¶ 25-57).  Ellicott's eight projects generated $37,388,554 in gross revenue for ACE.  (Def. Expert Report, Pl. Ex. H).  However, two of the projects did not generate a profit.  (*Id.*).

## 2.  Ellicott's Commissions and Draws

The parties dispute virtually every other fact that is material to calculating Ellicott's commissions.  The disputed issues can be separated into two groups, both of which affect the ultimate issue of whether ACE has failed to pay Ellicott his earned commissions in violation of the Wage Act and his compensation plan.  First, the parties dispute the amount of commissions that ACE has already paid Ellicott.  Second, the parties dispute, in at least four ways, how Ellicott's commissions should be calculated.  The Court will attempt to summarize the disputes.

To begin, the parties appear to agree that ACE paid Ellicott $613,468 in draws against his commissions.  It is also undisputed that ACE made eight additional payments totalling $76,888 to Ellicott from 2011 through 2013.  (Def. Ex. B).  However, the parties dispute whether those payments were part of Ellicott's commissions.  ACE contends that they were advances against commissions.  (Def. Mem. 3; Ginn Dep. 63:15-22).  Accordingly, ACE contends that it paid Ellicott a total of $690,356 in commissions.  (*Id.*).  Ellicott contends that the eight payments of $76,888 were business-expense reimbursements, not commission advances, to which he was separately entitled under the terms of his compensation plan.  (Pl. Reply 2-5).  In support of that contention, Ellicott notes that ACE paid him those reimbursements only after he submitted expense reports with receipts.  Moreover, he contends that ACE deducted the payments as business expenses on its own tax returns, but did not list them as income paid to Ellicott on a Form W-2 or 1099.  Accordingly, Ellicott contends that ACE has paid him only $613,468 in commissions.

The parties further disagree on at least four variables that affect how Ellicott's commissions are calculated.  First, Ellicott contends that he earned 40 percent commissions on the profits of seven of the eight projects in question.  ACE contends that the final five projects that Ellicott sold occurred after the parties orally modified his employment agreement to decrease his commissions to 30 percent.  In response, Ellicott notes that Hunton testified during his deposition that the oral modification did not occur until 2011, which was after seven of the eight projects began incurring costs.  (Hunton Dep. 68:11-14).  Second, Ellicott contends that the terms of his employment agreement did not mandate that he pay "negative commissions" for unprofitable projects; he would simply earn no commission on those projects.  ACE contends

that Ellicott agreed to pay back any draws against his commissions that he ultimately did not earn.  ACE's argument, however, goes even further.  It also argues that even if Ellicott did not accept any draws against his commissions, he would be required to compensate ACE for projects that resulted in negative gross profits—that is, ACE is essentially arguing that Ellicott agreed to pay "negative commissions" on unprofitable projects.  Third, Ellicott contends that he did not agree to split his commissions with any sales support staff; ACE contends that he did.  Fourth, Ellicott contends that ACE arbitrarily reduced the gross profits for his projects by 6.6 percent of their direct costs in order to cover "overhead and maintenance" expenses.[1]  ACE contends that it is generally accepted within the industry to deduct overhead and direct labor expenses from sales commissions.

Based on their respective positions on those four disputed issues, as well as how much they believe ACE has paid Ellicott in commissions already, Ellicott contends that he is entitled to $1.3 million in unpaid commissions; ACE contends that Ellicott actually owes it $286,391.

For the purposes of his summary judgment motion, Ellicott concedes that the commission split with support staff and the overhead expenses are disputed factual issues that should not be resolved in his favor at this stage.  However, he contends that he is entitled to 40 percent commissions on the first seven projects and that he did not earn "negative" commissions for unprofitable projects.  Therefore, he contends, ACE owes him at least *some* amount of unpaid commissions regardless of the two remaining disputed issues, and consequently, his motion for summary judgment should be granted.

---

[1] It appears that the calculation includes 1 percent for "O&M" expenses and 5.6 percent for "overhead" expenses.  (Pl. Mem. Ex. B).

### B.      Procedural Background

In April 2014, Ellicott filed suit against ACE in state court.  The complaint asserts one claim for violation of the Massachusetts Wage Act, seeking treble damages, attorneys' fees, and costs pursuant to Mass. Gen. Laws ch. 149, § 148 (Count One), and one claim for breach of contract (Count Two).  ACE removed the action to this Court in May 2014.

Ellicott has moved for summary judgment on both claims.  ACE has opposed that motion, and it has also cross-moved for summary judgment on Ellicott's Wage Act claim.

## II.   Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).  The non-moving party may not

simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

**III.   Analysis**

   **A.   Wage Act Claim**

Count One alleges that ACE violated the Massachusetts Wage Act by failing to pay Ellicott commissions that he earned by selling eight solar-installation projects.  Ellicott and ACE have cross-moved for summary judgment on Count One.  Before considering each motion separately under the appropriate standard of review, the Court will provide legal background on claims for unpaid commissions under the Wage Act.

      **1.   The Wage Act and Commissions Generally**

To state a claim under Mass. Gen. Laws ch. 149, § 148, a plaintiff must allege that (1) he was an employee under the statute, (2) his form of compensation constitutes a wage under the statute, and (3) the defendants violated the Act by not paying his wages in a timely manner. *Stanton v. Lighthouse Fin. Servs., Inc.*, 621 F. Supp. 2d 5, 10 (D. Mass. 2009).  Under the Wage Act, "any employee discharged from such employment shall be paid in full on the day of [his] discharge."  Mass. Gen. Laws ch. 149, § 148.  ACE does not contest that Ellicott was an "employee" within the meaning of the statute.  Rather, it contends that Ellicott's commissions should not be considered as "wages" covered by the statute.  Moreover, even if his commissions are considered covered "wages," it contends that it has not violated the statute because it has already paid Ellicott draws in an amount greater than the commissions that he earned.

Commissions qualify as wages under the statute "when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and

payable to such employee." *Id.*; *see Weems v. Citigroup, Inc.*, 453 Mass. 147, 151 (2009). Commissions are "due and payable" only if any contingencies relating to their entitlement have occurred. *Lohnes v. Darwin Partners, Inc.*, 2002 WL 31187688, at *3 (Mass. Super. Ct. July 23, 2002); *accord Cumpata v. Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000). "When a compensation plan specifically sets out the contingencies an employee must meet to earn a commission, courts apply the terms of the plan." *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280, 289 (D. Mass. 2013). Here, the terms of Ellicott's compensation plan required that ACE pay his commissions within 30 days after (1) the client paid ACE for the project and (2) the project installation was complete. ACE does not appear to dispute that any commissions owed to Ellicott on the eight projects were due and payable when he left the company in 2013.

"In order to be 'definitely determined,' a commission must be 'arithmetically determinable.'" *McAleer*, 928 F. Supp. 2d at 287 (citing *Wiedmann v. Bradford Group, Inc.*, 444 Mass. 698, 708 (2005)). Generally, discretionary bonuses are not considered commissions that are covered by the Wage Act because they are not arithmetically determinable when the employee leaves the company. *See id.* at 288 ("While [the defendant] exercises substantial discretion in the *administration* of the commission plan, the commissions are not *themselves* discretionary. The plan does not afford [the defendant] carte blanche to withhold or modify commission payments for any reason. It simply affords discretion over factual determinations, calculations, and eligibility." (emphasis in original)); *see also Roma v. Raito, Inc.*, 2015 WL 1523098, at *7 (D. Mass. Mar. 31, 2015) ("The term 'wages' has been interpreted to mean those wages which have been 'earned,' and not monies which are 'discretionary' or 'contingent.'"). In

short, a commission is definitely determined or arithmetically determinable—and thus covered

by the Wage Act—if it is "capable of being precisely ascertained." *Micciche v. N.R.I. Data and*

*Bus. Prods., Inc.*, 2011 WL 4479849, at *7 (D. Mass. Sept. 27, 2011).

### 2.      ACE's Motion for Summary Judgment

ACE's motion for summary judgment relies on two arguments.  First, ACE contends that

it is entitled to summary judgment on Ellicott's Wage Act claim because his unpaid commissions

are not definitely determined.  Specifically, it contends that because four of the underlying

variables affecting those commissions are disputed, they are not arithmetically determinable, and

therefore not covered by the Wage Act.  Second, ACE contends that even if Ellicott's

commissions are arithmetically determinable, it did not violate the Wage Act because the

undisputed evidence demonstrates that Ellicott received more in draws than he earned in

commissions.  In essence, ACE contends that Ellicott owes *it* money in overdrawn commissions.

ACE's first argument is flawed for several reasons.  As a preliminary matter, viewing the

record in the light most favorable to Ellicott and drawing all reasonable inferences in his favor, a

reasonable factfinder could resolve all four disputed calculation issues in Ellicott's favor.

Accordingly, a factfinder could determine that his commissions are "capable of being precisely

ascertained."  Its motion could be denied for that reason standing alone.  Moreover, ACE's

argument assumes that a commission must be undisputed at the summary judgment stage in

order to be arithmetically determinable under the terms of the Wage Act.  However, ACE has not

cited a single case in support of that proposition, and it is otherwise illogical.  If that proposition

were true, a defendant could manufacture disputes about how a commission is calculated to

singlehandedly defeat a Wage Act claim.  Courts in this district have rejected such an argument

in the past, and instead have allowed factfinders to determine whether commissions are arithmetically determinable even after the summary judgment stage. *See Cumpata*, 113 F. Supp. 2d at 168 (noting that [ACE's] argument "holds the potential for abuse" because "[e]mployers seeking to avoid the treble damages imposed by the Wage Act, need only raise a contractual question to remove themselves from its sweep. This outcome defeats the policy supporting the Wage Act . . . [and] the Court is unwilling to give the statute's language such a broad reading"); *see also N.R.I. Data*, 2011 WL 4479849, at *1 (concluding that defendant was entitled to judgment on plaintiff's Wage Act claim after a four-day bench trial because plaintiff's commissions were not capable of being precisely ascertained based on the court's findings of fact).

In short, Ellicott's commissions are certainly "*capable* of being precisely ascertained," depending on the factfinder's resolution of the underlying computational disputes. *N.R.I. Data*, 2011 WL 4479849, at *7 (emphasis added). It would be premature at this stage to conclude that his commissions are not definitely determined as a matter of law.

ACE's second argument—that no reasonable factfinder could find it liable for violating the Wage Act because Ellicott actually owes it overdrawn commissions—is also unpersuasive. In short, the underlying factual disputes regarding the contract prevent the Court from determining whether Ellicott owes ACE money, or vice versa, at this stage. A brief explanation is warranted.

Ellicott appears to concede that ACE paid him $613,468 in draws against his commissions. (Pl. Ex. B). ACE contends that Ellicott earned only $283,327 in commissions for his eight projects, and therefore, Ellicott owes the company his overdrawn commissions. ACE's

calculation of Ellicott's commissions, however, relies on at least one erroneous factual assumption and at least three disputed factual issues.

The erroneous factual assumption is that Ellicott's compensation agreement required him to reimburse ACE for not only unearned draws against his commissions, but also for "negative commissions." That is, ACE contends that Ellicott agreed to pay ACE "negative commissions" for unprofitable projects even if he did not accept any draws. That argument is wholly unsupported by the terms of Ellicott's compensation plan, as well as common sense. Ellicott was a sales employee compensated on a commission basis, not a partner or joint venturer with an equity stake in the company.

ACE's calculation also depends on three disputed factual issues: (1) whether Ellicott's commission rate was decreased from 40 percent to 30 percent and, if so, when that change occurred; (2) whether Ellicott was obligated to split his commissions with support staff; and (3) whether overhead expenses were properly deducted from Ellicott's commissions. Even if the last two issues are resolved in ACE's favor, the dispute over Ellicott's commission rate would be sufficient to deny ACE's motion for summary judgment. As the table below indicates, whether ACE owes Ellicott money or not depends on whether Ellicott was entitled to a 40 percent commission rate for all projects completed before 2011 (as he contends) or only projects completed before 2010 (as ACE contends).

| | Year | Project Name | Gross Profit ($) | Ellicott's Proposed Commission Rate (%) | Ellicott's Proposed Commission ($) | ACE's Proposed Commission Rate (%) | ACE's Proposed Commission ($) |
|---|---|---|---|---|---|---|---|
| 1 | 2008 | Heiland Electronics | 132,014 | 40 | 26,403 | 40 | 26,403 |
| 2 | 2009 | Houwelings PV/ST | (1,162,452) | 40 | 0 | 40 | 0 |
| 3 | 2009 | Travalle & Phippen | (46,812) | 40 | 0 | 40 | 0 |
| 4 | 2010 | United Natural Foods, RI | 161,846 | 40 | 32,369 | 30 | 24,276 |
| 5 | 2010 | Wine Group | 1,038,429 | 40 | 207,686 | 30 | 155,764 |
| 6 | 2010 | Fabricated Extrusions | 724,304 | 40 | 144,860 | 30 | 108,645 |
| 7 | 2010 | Foster Farms | 307,987 | 40 | 61,597 | 30 | 46,198 |
| 8 | 2013 | United Natural Foods, CA | 1,092,612 | 30 | 163,891 | 30 | 163,891 |
| | **Total** | | | | **636,808** | | **525,180** |
| | **Less Draws** | | | | **(613,468)** | | **(613,468)** |
| | **Total Owed Ellicott** | | | | **23,340** | | **(88,288)** |

Accordingly, ACE's motion for summary judgment will be denied.

### 3.  Ellicott's Motion for Summary Judgment

For the purposes of his motion, Ellicott accepts two of ACE's disputed commission calculations: the deduction for overhead costs and the commission split with support staff. However, he contends that there is no genuine dispute that he is entitled to a forty percent commission rate and that he is not obligated to pay "negative" commissions for unprofitable projects. Therefore, even if the other two disputed calculations are resolved in ACE's favor, Ellicott contends that ACE owes him at least some amount of unpaid commissions.

12

Accordingly, he requests that the Court enter summary judgment for him as to liability and schedule a damages trial.

However, as noted in the table above, whether ACE owes Ellicott unpaid commissions depends on the disputed commission rate for four of the projects. Moreover, ACE contends that Ellicott has overlooked the $76,888 in "advances" it paid him, and that those advances should count against his commissions. Ellicott contends that those "advances" had nothing to do with his commissions, and that they were business-expense reimbursements that he was entitled to separately under the terms of his compensation plan. Nonetheless, on Ellicott's motion, the Court must view the record in the light most favorable to ACE and draw all reasonable inferences in its favor. Under that demanding standard, the Court cannot definitively conclude that ACE owes Ellicott unpaid commissions.

Accordingly, Ellicott's motion for summary judgment on his Wage Act claim will be denied.

### B.     Breach of Contract Claim

Ellicott's motion for summary judgment on his breach of contract claim rests on the same disputed facts. In short, the issue of whether ACE violated the terms of Ellicott's compensation plan by failing to pay him his earned commissions is a question of fact properly deferred for trial.[2] Accordingly, Ellicott's motion for summary judgment on his breach of contract claim will be denied.

### IV.     Conclusion

For the foregoing reasons, plaintiff Stephen Ellicott's motion for summary judgment is

---

[2] ACE does not appear to dispute that the letter detailing Ellicott's compensation plan was effectively a valid employment agreement.

13

DENIED, and defendant ACE's cross-motion for summary judgment on the Wage Act claim is

DENIED.

**So Ordered.**


                                                    /s/  F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated:  April 28, 2016                              United States District Judge